[Cite as *State ex rel. Knight Transp. v. Indus. Comm.*, 2021-Ohio-4574.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Knight Transportation, Inc., | : | |
| Relator, | : | |
| v. | : | No. 20AP-296 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on December 28, 2021

**On Brief:** *Reminger Co., L.P.A.*, and *Ronald A. Fresco,* for relator. **Argued:** *Ronald A. Fresco.*

**On Brief:** *Dave Yost,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio. **Argued:** *Natalie J. Tackett.*

**On Brief:** *Gould Law, LLC,* and *Craigg E. Gould,* for respondent Michael A. Wurschum.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Knight Transportation, Inc., commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's motion to find that an allowed claim based on the condition "substantial aggravation of a pre-existing arachnoid cyst" has abated, and to issue an order granting said motion.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that there was some

evidence before the commission to support its determination that substantial aggravation of respondent, Michael A. Wurschum's ("claimant"), preexisting arachnoid cyst had not abated. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed objections to the magistrate's decision. In its first objection, relator argues that the magistrate erred because the claimant failed to produce evidence to rebut relator's medical evidence (Dr. Glazer's report) that his preexisting arachnoid cyst condition had returned to the level that would have existed without the injury. We disagree.

{¶ 4} Contrary to relator's assertion, the claimant did present evidence that directly rebutted relator's medical evidence. The claimant offered the office notes and report of Dr. Fye. Dr. Fye expressly stated that he disagreed with Dr. Glazer's opinion that the conditions substantially aggravated by the claimant's work injury are resolved. He expressly stated that the claimant's arachnoid cyst condition will continue to be an issue for the claimant as he continues to perform heavier labor activities. The fact that Dr. Fye did not limit his opinion to just the arachnoid cyst condition does not nullify his conclusion that the claimant's symptoms never completely resolved. The claimant also testified that his symptoms from the aggravation of his arachnoid cyst had not completely abated. Relator is really arguing that the opinion of its medical expert, Dr. Glazer, is more persuasive than Dr. Fye's opinion because it is more focused. Such an argument goes to the weight of the evidence, which is within the sole province of the commission to decide. Because the claimant presented some medical evidence that rebutted relator's medical evidence with respect to whether the aggravation of the claimant's preexisting arachnoid cyst condition had abated, we overrule relator's first objection.

{¶ 5} In its second objection, relator argues that the magistrate erred in concluding that the claimant's testimony was some evidence supporting the commission's decision. Again, we disagree.

{¶ 6} Because Dr. Fye's opinion constitutes objective diagnostic and/or objective clinical findings that the aggravation of the claimant's preexisting arachnoid cyst condition had not abated, the commission could also consider the claimant's subjective complaints in reaching its decision. R.C. 4123.01(C)(4). (Subjective complaints may be evidence of substantial aggravation if supported by objective diagnostic findings, objective clinical findings, or objective test results.) Therefore, we overrule relator's second objection.

{¶ 7} Relator's third and fourth objections are related and we consider them together. In its third objection, relator argues that, contrary to the magistrate's statement, it did present medical evidence (Dr. Glazer's report) to support its argument that the reoccurrence of the arachnoid cyst was not related to the aggravation of the preexisting arachnoid cyst. In its fourth objection, relator argues that, contrary to the magistrate's statement, Dr. Glazer's report separated out the aggravation of the arachnoid cyst condition from the other consequences of the claimant's injury and surgery. Neither objection, however, invalidates the magistrate's conclusion that there is some evidence supporting the commission's decision.

{¶ 8} Even if the magistrate was mistaken in stating that there was no evidence in the record that the reoccurrence of the arachnoid cyst was not related to the aggravation of the preexisting arachnoid cyst, and in stating that Dr. Glazer did not separate out the aggravation of the arachnoid cyst condition from the other consequences of the claimant's injury and surgery, these misstatements are of no consequence. Nothing in the magistrate's decision indicates that the magistrate weighed the medical evidence. Quite the contrary, the thrust of the magistrate's decision is that Dr. Fye's opinion and the claimant's testimony are some evidence supporting the commission's decision that the aggravation of the arachnoid cyst condition had not completely abated. Any misstatement by the magistrate in characterizing Dr. Glazer's report is of no consequence because the commission did not rely on Dr. Glazer's report and the magistrate was not weighing the evidence. For these reasons, we overrule relator's third and fourth objections.

{¶ 9} In his last objection, relator argues that the magistrate wrongly found there was no objective evidence that the claimant "suffers from some condition or tendency to develop spinal cysts that can be taken to stand apart from the process of injury in this case." (Mag.'s Decision at ¶ 50.) According to relator, such a finding belies the very nature of substantial aggravation litigation and the magistrate erred in concluding that relator's motion failed because there was a lack of proof between the preexisting arachnoid cyst and recurrent arachnoid cyst.

{¶ 10} This objection suffers from the same mistaken premise as relator's third and fourth objections. Essentially, relator is arguing that the magistrate weighed the evidence improperly because it mischaracterized and/or ignored Dr. Glazer's report. As previously noted, the magistrate did not weigh the evidence. Rather, the magistrate simply found

there was some evidence (Dr. Fye's opinion and the claimant's testimony) to support the commission's decision.  Therefore, we overrule relator's fifth objection.

{¶ 11}  Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law.  Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

DORRIAN, P.J., and MENTEL, J., concur.

————————————

## **APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Knight Transportation, Inc., | : | |
| Relator, | : | |
| v. | : | No.  20AP-296 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

---

### M A G I S T R A T E ' S   D E C I S I O N

Rendered on June 1, 2021

---

*Reminger Co., L.P.A.,* and *Ronald A. Fresco,* for relator.

*Dave Yost,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

*Gould Law, LLC,* and *Craigg E. Gould,* for respondent Michael A. Wurschum.

---

IN MANDAMUS

{¶ 12}  Relator, Knight Transportation, Inc. ("relator" or "Knight"), seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying Knight's motion requesting the commission to find that an allowed claim based on substantial aggravation of a pre-existing condition has abated.  Knight moved on the basis that the injured worker, respondent Michael A. Wurschum, had returned to the baseline condition that existed prior to his workplace injury with respect to the allowed condition for which Knight sought abatement.

Findings of Fact:

{¶ 13}  1.  Wurschum sustained an injury in the course and scope of his employment with relator as a truck driver on May 17, 2018.  (Stip. at 7.)  While the first report of injury is not found in the record, Wurschum's general description to subsequent medical providers was that on that date, he was climbing into the cab of his truck, lost his footing, fell in a manner that twisted his back, and while he did not fall to the ground, he had to lean against the cab of his truck because his legs were giving out.  (Stip. at 7.)  The next day he suffered severe pain and could not move.

{¶ 14}  2.  Relator participates in Ohio's Workers' Compensation program as a self-insured employer.

{¶ 15}  3.  On May 19, 2018, Wurschum sought care from Trinity Health System's Care Facility in Steubenville, Ohio.  (Stip. at 1.)

{¶ 16}  4.  His treating physician sent him for radiology exams due to progressive loss of sensation and function of Wurschum's lower extremities.  (Stip. at 3.)  Successive MRIs on June 9 and 11, 2018 revealed significant spinal canal stenosis caused by an arachnoid cyst of the lumbar and thoracic lumbar spine.  Mark A. Fye, M.D., scheduled urgent surgery for Wurschum on June 12, 2018.  (Stip. at 9.)  Dr. Fye's post-operative report noted a pre-operative diagnosis as follows: "Severe spinal stenosis T10 through L1 with epidural cyst large causing cord compression and progressive myelopathy with weakness in both lower extremities."  (Stip. at 10.)  The post-operative diagnosis was identical.  Dr. Fye performed a T10, T11, T12, L1 laminectomy in connection with excision of the epidural cyst, and decompression of the spinal cord.

{¶ 17}  5.  Dr. Fye was assisted by Vincent Miele, M.D., during the surgery for actual excision of the cyst proper.  (Stip. at 12.)  Dr. Miele's post-operative report describes removal of a large cyst and placement of a large fascial graft to repair the affected area of the spinal cord. (Stip. at 12.)

{¶ 18}  6.  The post-operative pathology report stated a final diagnosis of "epidural cyst, thoracic and lumbar, spinal laminectomy: fibrous tissue consistent with cyst wall." (Stip. at 14.)

{¶ 19}  7.  Dr. Fye examined Wurschum again on June 25, 2018.  Dr. Fye noted as follows: "He is a couple weeks out from his laminectomy thoracic along with excision of intraoperative spinal tumor. Overall, he is doing well.  Wounds healing, no signs of any

spinal fluid leak.  He had arachnoid cyst that was basically epidural, but he had intradural. * * * Clinically, he seems to be getting stronger in his legs, using walker, but he is much stronger than he was prior to surgery."  (Stip. at 17.)

{¶ 20}  8.  Wurschum was released to return to his former position of employment without restrictions effective July 30, 2018 based on a July 26, 2018 examination by Dr. Fye.  (Stip. at 23.)

{¶ 21}  9.  Nathan A. Fogt, D.O., performed and submitted a file review on behalf of relator on July 5, 2018.  After reviewing Wurschum's records, Dr. Fogt opined that, in addition to the initially allowed condition of lumbar strain, the additional conditions of substantial aggravation of pre-existing arachnoid cyst should be allowed, and the related surgery was a medically necessary procedure.  (Stip. at 21.)

{¶ 22}  10.  Relator's self-insured risk management provider, York Risk Services Group, accordingly notified Wurschum that the additional conditions were allowed by letter dated July 16, 2018.  (Stip. at 22.)

11.  Including the additional allowed conditions post-surgery, Wurschum's claim was globally allowed for "strain of lower back; substantial aggravation of pre-existing spinal stenosis T10-11, T11-12, T12-L1; substantial aggravation of pre-existing arachnoid cyst."  (Stip. at 47.)

{¶ 23}  12.  On January 9, 2019, Wurschum again saw Dr. Fye complaining of renewed weakness in his right leg.  (Stip. at 31.)  Dr. Fye ordered an additional MRI to check for recurrence of the arachnoid cyst.  (Stip. at 31.)  Dr. Fye noted as follows:  "He is about 7 months out from his tumor removal * * *. On re-examination, he has got fairly good strength in both lower extremities.  He walks okay.  I do not see any changes from his previous exam but we will go ahead and do an MRI scan to make sure there is no recurrence of his tumor." (Stip. at 31.)

{¶ 24}  13.  Wurschum underwent the MRI exam on March 1, 2019.  (Stip. at 34.)  A resulting radiology report from Amanda Wiant, M.D., noted that "[s]ince the prior [radiology] study, the patient has undergone laminectomy from T10 through L1.  The extradural cyst from T10 through L1 is again seen, and measures 10 cm in craniocaudal dimension, 1.7 cm in anterior posterior dimension, and 3.3 cm in transverse dimension. There again is mass effect on the dorsal aspect of the cord, improved."  (Stip. at 34.)

{¶ 25} 14. Relator scheduled Wurschum for an independent evaluation to assess the significance of the cyst reoccurrence in the context of the existing claim. Dennis A. Glazer, M.D., examined Wurschum on May 13, 2019 and reviewed his records before producing an independent medical evaluation report. (Stip. at 38.) Dr. Glazer opined as follows:

> It is my opinion within reasonable medical probability that the substantially aggravated condition of spinal stenosis at T10-11, should have returned to the baseline such that it can now be said that the substantially aggravated condition has abated. This was surgically addressed. * * * He also has evidence of a recurrent cyst which is unrelated to this claim. Therefore, substantial aggravation should be considered as abated.

{¶ 26} Dr. Glazer repeated his findings for the other levels of Wurschum's spine affected by the injury, stating:

> It is my opinion within reasonable medical probability that the claimant had prior issues with spasticity and continues to have them. It would appear that the claimant's symptoms relative to the arachnoid cyst are the same. The cyst reoccurred, which is unrelated to the claimant's employment by any means of causation. As such, it is my opinion the allowed condition of arachnoid cyst has returned to the level that would have existed but for the injury such that it can be now said that this substantially aggravated condition has abated.

{¶ 27} 15. Relator filed on August 16, 2019 a motion seeking a declaration under R.C. 4123.54(G) that the allowed condition of substantial aggravation of pre-existing condition had abated. The motion specifically requested as follows: "Now comes the employer, by and through counsel, and moves the Industrial Commission for a finding that the condition 'substantial aggravation of preexisting large arachnoid cyst' has abated." (Stip. at 44.)

{¶ 28} 16. Dr. Fye produced office notes based on an examination of Wurschum on September 5, 2019. (Stip. at 45.) Dr. Fye noted Wurschum's complaints of numbness and pain and one incident of loss of bowel control. Based on Wurschum's own description, Dr. Fye concluded that some of these increased complaints were due to a changed routine at work due to heavier labor. Dr. Fye concluded as follows:

> Overall, his back exam is unremarkable. He has got less pain now. Most of his back pain when he was unloading the truck was more lumbar and thoracic areas. Incision is well healed.
>
> I think he is stable. He is to continue to drive truck, just do work restrictions, no heavy lifting. I will see him back as needed.

(Stip. at 45.)

{¶ 29} 17. Dr. Fye produced an opinion in response to Dr. Glazer's report and disagreeing with Dr. Glazer's conclusions on September 27, 2019. (Stip. at 46.) In this, Dr. Fye stated as follows:

> I reviewed the IME report from Dennis Glazer, M.D. in regards to the above patient. I disagree that the conditions substantially aggravated by his work injury are resolved. His aggravations of spinal stenosis T10-11, spinal stenosis T11-T12, spinal stenosis T12-L1 and arachnoid cyst will continue to be an issue for him as he continues to perform heavier labor activities.
>
> Upon my most recent visit of 9/5/2019 I recommended that the patient can work full time[,] wanted him to restrict lifting to no greater than 50 pounds due to a recent flare up because of heavier labor. I also want him to get up and move a[t] least every 4 hours as sitting longer than that is not recommended. Because he is status post back surgery ideally getting up even more frequently is better but the maximum is 4 hours. Michael also has had to drive at work greater than 6 days in a row which requires long periods [of] sitting so I recommended he not drive greater than 6 days which is still a lot but that is the most I would advise without a break.

(Stip. at 46.)

{¶ 30} 18. A district hearing officer ("DHO") granted relator's motion by order mailed October 11, 2019 accepting Dr. Glazer's opinion that Wurschum had reverted to his baseline condition. (Stip. at 48.)

{¶ 31} 19. Wurschum appealed, and after a hearing before a commission staff hearing officer ("SHO"), the SHO vacated the DHO's order and issued an order mailed January 18, 2020 denying relator's motion to declare that the substantial aggravation of pre-existing conditions had abated:

It is the finding of the Staff Hearing Officer that the Employer
has not met its burden of proving abatement of the allowed
condition of "substantial aggravation of pre-existing
arachnoid cyst." Therefore, the Staff Hearing Officer denies
the Employer's request to find that this condition has abated.

(Stip. at 49.)

{¶ 32} The SHO indicated that the determination was based on the office notes of Dr. Fye, Dr. Fye's opinion report disagreeing with the report of Dr. Glazer, as well as Wurschum's personal testimony that, although initial improvement followed surgery, the symptoms never completely resolved, and Wurschum suffered continued lower back pain, leg weakness, and spasms while working under restrictions declared by Dr. Fye.

{¶ 33} 20. Relator's appeal from the SHO's order was refused by the commission by order mailed February 6, 2020. (Stip. at 51.)

{¶ 34} 21. The commission denied reconsideration by order dated February 26, 2020. (Stip. at 59.)

{¶ 35} 22. Relator filed its complaint in mandamus on June 1, 2020.

Discussion and Conclusions of Law:

{¶ 36} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 37} As a preliminary question, the magistrate determines that mandamus is the appropriate remedy here rather than an appeal as a right-to-participate action. Because the commission has determined initially that Wurschum's claim for aggravation of pre-existing condition would be allowed, there is no appeal available to the court of common

pleas under R.C. 4123.512 from the commission's refusal to find abatement. Relator lacks a legal remedy and may resort to mandamus:

> In order for this decision to be appealable to the court of common pleas, the commission would have had to make a finding that the preexisting condition was not aggravated in the course of * * * employment and that the condition was therefore disallowed. No such finding was made here. Accordingly, this matter, a decision about the extent of [the employee's] disability, is not appealable to the court of common pleas under R.C. 4123.512.
>
> * * *
>
> If we held that a decision to no longer compensate an individual for an allowed condition was in essence the same as a decision on the right to participate, we would subject a whole class of commission decisions to a less deferential level of review that the legislature did not authorize.
>
> We hold that a decision that a claimant's preexisting condition that was substantially aggravated by a workplace injury has returned to the level that would have existed absent the workplace injury involves the extent of a claimant's disability that may be challenged in a mandamus action.

*Clendenin v. Girl Scouts of W. Ohio*, 150 Ohio St.3d 300, 2017-Ohio-2830, ¶ 15, 17-18.

{¶ 38} Instances of industrial injury involving aggravation of a pre-existing condition present a special case in Ohio Workers' Compensation law. R.C. 4123.01(C)(4) provides the initial premise that the definition of *compensable injury* does not include the following:

> A condition that pre-existed an injury unless that pre-existing condition is substantially aggravated by the injury. Such a substantial aggravation must be documented by objective diagnostic findings, objective clinical findings, or objective test results. Subjective complaints may be evidence of such a substantial aggravation. However, subjective complaints without objective diagnostic findings, objective clinical findings, or objective test results are insufficient to substantiate a substantial aggravation.

{¶ 39} There is, however, no statutory definition of *substantial aggravation. See, e.g., Rowland v. Buehrer,* 2d Dist. No. 27412, 2017-Ohio-7096, ¶ 35. Courts have generally resorted to the unfortunately tautological premise that the dictionary definition of

"substantial" includes "considerable." *See, e.g., Pflanz v. Pilkington LOF,* 1st Dist. No. C-100574, 2011-Ohio-2670, ¶ 17 ("Thus, to be compensable, the aggravation of a preexisting condition must be substantial both in the sense of being considerable and in the sense of being firmly established through the presentation of objective evidence."); *see also, Woods v. Bur. of Workers' Comp.,* 2d Dist. No. 26561, 2016-Ohio-237.

{¶ 40} The code specifically addresses abatement of substantially aggravated conditions at R.C. 4123.54(G):

> If a condition that pre-existed an injury is substantially aggravated by the injury, and that substantial aggravation is documented by objective diagnostic findings, objective clinical findings, or objective test results, no compensation or benefits are payable because of the pre-existing condition once that condition has returned to a level that would have existed without the injury.

{¶ 41} As with substantial aggravation, the definition of "level that would have existed without the injury" in R.C. 4123.54(G), commonly termed *baseline* in these cases, is not statutorily refined to include or exclude related or derivative conditions.

{¶ 42} Relator asserts here that Wurschum bears the burden, as with an initial allowance of industrial injury and allowed condition, of establishing that his impairment remains above that putative baseline; in other words, that in cases of pre-existing conditions and abatement, the burden shifts to the employee to prove continuing existence of the aggravating condition once the employer has moved for a finding of abatement pursuant to R.C. 4123.54(G). Relator then argues that there is not legally sufficient evidence to establish any persisting aggravated condition for Wurschum above the baseline.

{¶ 43} With respect to the burden of proof before the commission, the magistrate finds that this is not a settled question in abatement cases. While not directly on point, the following reasoning from *State ex rel. Dinner v. Indus. Comm.,* 10th Dist. No. 03AP-322, 2004-Ohio-1778, ¶ 27, quoting *State ex rel. Quarto Mining Co. v. Foreman,* 79 Ohio St.3d 78, 83-84 (1997), suggests that Wurschum does not bear the burden here once the commission has determined that aggravation was proven: " 'The claimant's burden is to persuade the commission that there is a proximate causal relationship between his work-connected injuries and disability, and to produce medical evidence to this effect. *Murphy v. Carrollton Mfg. Co.,* 61 Ohio St.3d 585 (1991); *State ex rel. Basham v. Consolidation Coal Co.,* 43 Ohio St.3d 151 (1989); *Fox v. Indus. Comm.,* 162 Ohio St. 569 (1955); *Aiken v. Indus.*

*Comm.*, 143 Ohio St. 113 (1944). The claimant's burden in this regard does not extend so far as to require him to raise, and then eliminate, other possible causes of his disability.' " The magistrate therefore concludes that relator as movant bore the burden of proving abatement. The magistrate further concludes, however, that this is of little importance in this mandamus proceeding given the state of evidence in the stipulated record. The existence of a clear legal duty on the part of the commission to grant the motion for abatement does not hinge on any incorrect allocation of the burden of proof by the commission in considering relator's motion, since both parties presented affirmative factual support and neither rested on the status quo.

{¶ 44} The question put before the commission by relator's motion was whether the aggravation to a pre-existing condition, which relator expressly and specifically limited to the arachnoid cyst, caused by Wurschum's workplace injury had abated such that Wurschum was in the state or condition that he would have experienced but for the injury. Tied to this are a number of issues with ill-defined boundaries for both the medical expert opinion providers and the commission to resolve: What was the pre-injury baseline, what was the post-surgery baseline, and to what extent did the reoccurrence of the arachnoid cyst alter the post-surgery baseline such that an assessment of aggravation of the pre-existing condition should be adjusted?

{¶ 45} The first factual assessment by the commission prior to initial allowance of the claims in this case was that Wurschum was asymptomatic with respect to the cyst prior to his fall on the job. Wurschum therefore argues that the baseline in this case is that he was entirely asymptomatic and that any persistent symptoms and limitations are in fact an aggravation above that initial baseline. Consistent with this view, counsel for the commission pointed out at argument that another approach is to acknowledge that once Wurschum had surgery to remove the cyst, he would never return to the asymptomatic pre-injury baseline because of permanent alteration to his spinal anatomy through laminectomies and other surgical impact to the body. These conditions, the commission argues, are above the baseline because they flow from the cyst removal surgery and are therefore proximately caused by the aggravation of the cyst resulting from his workplace injury.

{¶ 46} Relator stresses to the contrary that a fundamental factual point here is that the accident did not cause the cyst but aggravated the cyst and made it symptomatic. From

this, relator argues that once the cyst was removed a first time, Wurschum was in the state or condition with respect to the cyst that he would have experienced but for the injury: with the cyst gone, there was no pre-existing condition to aggravate.

{¶ 47} From this, relator argues that Dr. Fye's report does not address the question of whether the cyst, post-surgery and then post-reoccurrence, had returned to a level that would have existed without the injury. Relator further emphasizes that it seeks only abatement of the cyst condition, and not a consideration of whether the other allowed claims related to surgery and back strain have resolved. Relator posits that Dr. Glazer's report completely addresses the pertinent question and relies on the surgical history to conclude that the pre-existing cyst was resolved through removal, and Wurschum had reverted to baseline with respect to any aggravation of the now-absent cyst itself, if not with respect to his other allowed conditions that flowed in part from the cyst surgery.

{¶ 48} R.C. 4123.54(G) requires that, when considering abatement of a substantially aggravated pre-existing condition, the commission must consider evidence of whether the injured worker has returned to a level of function consistent with the pre-existing condition but without the substantial aggravation caused by the industrial injury. The adjudication of an abatement motion therefore requires not only a proximate cause analysis but also reliance on objective clinical, diagnostic, and testing data. As with allowance of other types of claims, the commission must rely upon medical evidence to establish a causal relationship between an industrial injury and an application for compensation. Without medical evidence, the commission has no basis to determine the cause of a medical condition because it does not have that expertise. *State ex rel. Cooper Tire & Rubber Co. v. Bowers*, 10th Dist. No. 14AP-331, 2015-Ohio-2240, ¶ 44, citing *State ex rel. Yellow Freight Sys. Inc. v. Indus. Comm.*, 81 Ohio St.3d 56 (1998).

{¶ 49} The magistrate finds that the commission had before it some evidence to support the conclusion that substantial aggravation of the pre-existing condition had not abated. The denial of relator's motion was based upon Dr. Fye's report and conclusion that the arachnoid cyst will continue to affect Wurschum, particularly when he performs heavier labor activities. Dr. Fye accordingly imposed lifting restrictions as a condition to return to work. Neither Dr. Fye's opinion nor Dr. Glazer's report attempted to separate out the cyst proper from the other consequences of injury and surgery. It is therefore difficult for relator

to establish that the cyst itself should be abated to the exclusion of other persisting conditions.

{¶ 50} Moreover, despite relator's assertions to the contrary, Dr. Fye's January 9, September 5, and September 27, 2019 reports do constitute some evidence upon which the commission could rely. There is no medical opinion testimony that the reoccurrence of the cyst is not related to the aggravation of the cyst, and the commission was not obligated, nor even empowered, to make that logical leap that relator's argument requires. Moreover, there is nothing equivocal in Dr. Fye's reports, which remain consistent across time from his post-operative report to his final opinion provided to rebut Dr. Glazer's conclusion that bare fact of removal of the cyst in 2018 constitutes the only useful and objective evidence regarding whether the pre-existing condition subsists and could still be subject to aggravation by the injury. Nor is there objective evidence that, as suggested by relator, must be considered by the commission to conclude that Wurschum suffers from some condition or tendency to develop spinal cysts that can be taken to stand apart from the process of injury in this case.

{¶ 51} While the magistrate understands the risk of unwarranted exposure for employers if abatement were not available due to the difficulty of establishing a baseline, this is in fact not a case where the pre-existing condition could reliably be said to have been entirely remedied or eliminated by the post-injury treatment. Drs. Glazer and Fye presented conflicting opinions on whether surgery had resolved the aggravation of the baseline level of an asymptomatic cyst. Without accepting the commission's position taken when arguing this mandamus action that post-surgery the claimant could never be returned to his baseline condition, there was some evidence before the commission in the form of Dr. Fye's opinion that, post-surgery and post-reoccurrence, Wurschum still suffered from an aggravation of his previously asymptomatic pre-existing condition of an arachnoid cyst on his spine.

{¶ 52} Because the commission's decision is supported by some evidence and is in accordance with law, it is the decision and recommendation of the magistrate that the requested writ of mandamus be denied.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).