[Cite as *Pulaski v. Bur. of Workers' Comp.*, 2022-Ohio-1344.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JASON S. PULASKI | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 29356 |
| | : | |
| v. | : | Trial Court Case No. 2021-CV-1922 |
| | : | |
| BUREAU OF WORKERS' | : | (Civil Appeal from |
| COMPENSATION, et al. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of April, 2022.

. . . . . . . . . . .

MARCUS A. HEATH, Atty. Reg. No. 0096777, GARY D. PLUNKETT, Atty. Reg. No. 0046805, & EMILY A. PORT, Atty. Reg. No. 0101442, 3033 Kettering Boulevard, Point West, Suite 201, Dayton, Ohio 45439
    Attorneys for Plaintiff-Appellant

KEVIN R. SANISLO, Atty. Reg. No. 0079622 & KENT HUSHION, Atty. Reg. No. 0099797, 200 Civic Center Drive, Suite 800, Columbus, Ohio 43215
    Attorneys for Defendant-Appellee, CCBCC, Inc.

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Plaintiff-Appellant, Jason Pulaski, appeals from the judgment of the Montgomery County Common Pleas Court rendered in an action on a workers' compensation appeal commenced by Pulaski from a decision of the Ohio Industrial Commission. The trial court granted employer CCBCC, Inc.'s motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim under Civ.R. 12(B)(1) and Civ.R. 12(B)(6). For the reasons that follow, we affirm the trial court's decision.

## I.    Facts and Procedural History

{¶ 2} On May 18, 2019, Pulaski sustained an injury during his course of employment at CCBCC, Inc. ("CCBCC") in Montgomery County, Ohio ("May injury"). He subsequently filed a workers' compensation claim which was assigned Claim No. 19-151434. The claim was certified and allowed for a "right shoulder strain and right labrum tear." Pulaski underwent an operation for his injuries on or about August 16, 2019.

{¶ 3} On or about September 19, 2019, Pulaski slipped down some stairs at home. As he was falling, he reached out with his injured right arm and grabbed a handrail, at which time he heard a pop and experienced an immediate onset of pain. He was later diagnosed with a new tear in his right shoulder ("September injury").

{¶ 4} On November 30, 2020, CCBCC filed a C-86 motion with the Ohio Industrial Commission ("Commission") requesting (1) the termination of temporary total disability as a result of the allowed conditions having reached maximum medical improvement; (2) a declaration that Pulaski's temporary total disability compensation and medical expenses paid after the September injury are overpaid; and (3) a declaration that the September injury was an intervening injury such that no further compensation and/or medical benefits

be paid in the claim.

{¶ 5} A district hearing officer ("DHO") with the Commission conducted a hearing on January 22, 2021, and subsequently issued an order on January 27, 2021. After invoking the continuing jurisdiction of the Commission based on newly discovered evidence and changed circumstances, the DHO found that Pulaski had suffered an intervening injury to his right shoulder that was first documented on September 19, 2019. The order terminated payment of temporary total disability compensation as of September 19, 2019, and ordered that compensation and medical bills paid between the time of the intervening September injury and the date of the hearing be declared overpaid and be recouped in accordance with the non-fraud provision of R.C. 4123.511(K). The DHO further found that Pulaski had reached maximum medical improvement ("MMI") for the allowed conditions. Finally, the DHO denied CCBCC's request that no further compensation and/or treatment be payable under the claim.

{¶ 6} Pulaski appealed from the DHO's decision, and a hearing was held before a staff hearing officer ("SHO"). On April 3, 2021, the SHO affirmed the order of the DHO. The SHO found that Pulaski had experienced an intervening injury on September 19, 2019, due to the slip and fall at his that caused a new tear in his right shoulder. The SHO found that the event constituted an intervening injury sufficient to break the causal connection between the allowed conditions and Pulaski's symptoms and problems regarding his right shoulder after the September injury. The SHO stated that any compensation and medical benefits paid after September 19, 2019, were due to the September injury and not due to the allowed conditions in the claim. As such, the SHO

ordered that all authorized compensation and medical benefits awarded after September 19, 2019 be vacated, and this compensation and medical benefits be declared overpaid and subject to recoupment pursuant to R.C. 4123.511(K). Lastly, the SHO found that Pulaski's allowed conditions had reached MMI. The SHO made no explicit ruling on CCBCC's request that no further compensation and/or treatment be payable in the claim.

{¶ 7} Pulaski appealed the SHO's decision to the Commission, which declined to hear the appeal under R.C. 4123.511(E). On May 13, 2021, Pulaski filed a notice of appeal and complaint in the Montgomery County Common Pleas Court pursuant to R.C. 4123.512. Attached to Pulaski's notice of appeal were copies of the DHO's order, the SHO's order, and the decision of the Commission declining to hear the appeal.

{¶ 8} On June 2, 2021, CCBCC filed a motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim. CCBCC subsequently filed an answer to Pulaski's complaint.

{¶ 9} On January 3, 2022, the trial court granted CCBCC's motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim. The trial court stated that R.C. 4123.512 only allows appeals in a common pleas court based upon right to participate claims, not extent of disability claims. The trial court found that the appeal before it involved the extent of disability due to the DHO's explicit denial of CCBCC's request that no further compensation and/or treatment be payable in the claim. Given that the trial court found it lacked jurisdiction, it also found that the complaint failed to state a claim upon which relief could be granted.

{¶ 10} Pulaski timely appealed from the order of the common pleas court and

requested that the appeal be expedited. We granted the motion to expedite the appeal and will now address Pulaski's two assignments of error.

## II. Jurisdiction of the Common Pleas Court

{¶ 11} Pulaski's two assignments of error state:

THE TRIAL COURT ERRED BY RELYING ON THE DISTRICT HEARING ORDER TO GRANT APPELLEE'S MOTION TO DISMISS WHEN THE STAFF HEARING ORDER TERMINATED APPELLANT'S RIGHT TO PARTICIPATE IN THE WORKER'S COMPENSATION FUND.

THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION TO DISMISS WHEN THE STAFF HEARING ORDER HELD THAT THE ALLEGED INTERVENING INJURY BROKE THE CAUSAL CONNECTION BETWEEN APPELLANT'S DISABILITY AND THE ALLOWED CONDITIONS OF HIS CLAIM.

{¶ 12} Both assignments of error revolve around the issue of whether the trial court erred in granting the motion to dismiss due to a lack of subject-matter jurisdiction. Because these issues are interrelated, they will be considered together.

## A. De Novo Review

{¶ 13} The trial court granted CCBCC's motion to dismiss under both Civ.R. 12(B)(1) and 12(B)(6). When reviewing a dismissal by the trial court pursuant to either Civ.R. 12(B)(1) or 12(B)(6), we consider the matter de novo. *Carter v. Trotwood-Madison City Bd. Of Edn.*, 181 Ohio App.3d 764, 2009-Ohio-1769, 910 N.E.2d 1088, ¶ 26 (2d Dist.). In a de novo review, we give no deference to the trial court's decision but instead

apply the same standard that the trial court should have used, thus conducting our own independent review. *Coterel v. Reed*, 2016-Ohio-7411, 72 N.E.3d 1159, ¶ 11 (2d Dist.).

{¶ 14} Civ.R. 12(B)(1) provides for the dismissal of a complaint for "lack of jurisdiction over the subject-matter[.]" Subject-matter jurisdiction does not relate to the rights of the parties, but to the power of the court to hear and decide a case on the merits. *State ex. Rel. Jones v. Suster*, 84 Ohio St.3d 70, 75, 701 N.E.2d 70 (1998). When a trial court rules on a Civ.R. 12(B)(1) motion, the court must determine whether the claim raises any action cognizable in that court. *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80, 537 N.E.2d 641 (1989). However, "[t]he trial court is not confined to the allegations of the complaint when determining its subject-matter jurisdiction pursuant to a Civ.R. 12(B)(1) motion to dismiss, and it may consider material pertinent to such inquiry without converting the motion into one for summary judgment." *Southgate Development Corp. v. Columbia Gas Transmission Corp.*, 48 Ohio St.2d 211, 358 N.E.2d 526 (1976), paragraph one of the syllabus.

{¶ 15} On the other hand, a motion to dismiss under Civ.R. 12(B)(6) for failure to state a claim on which relief can be granted tests the sufficiency of the complaint. *Volbers-Klarich v. Middletown Mgt.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 11. The trial court may not consider matters outside the pleading or the motion shall be treated as a motion for summary judgment. Civ.R. 12(B). However, materials incorporated within a complaint are considered part of that pleading and may be considered in determining a Civ.R. 12(B)(6) motion. *Williams v. Dayton Water*, 2020-Ohio-4332, 158 N.E.3d 654, ¶ 13 (2d Dist.). "In order for a complaint to be dismissed under Civ.R. 12(B)(6)

for failure to state a claim, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to relief." *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 5. "A court must presume that all factual allegations in the complaint are true and must make all reasonable inferences in the plaintiff's favor." *Wagers v. Kettering Affiliated Health Servs.*, 2d Dist. Montgomery No. 28192, 2020-Ohio-11, ¶ 7, citing *Volbers-Klarich* at ¶ 12.

### B. Worker's Compensation Review

{¶ 16} Judicial review of Commission rulings may be sought in one of three types of proceedings: by direct appeal to a common pleas court under R.C. 4123.512, by filing an original action for a writ of mandamus in the Tenth District Court of Appeals or the Ohio Supreme Court, or by seeking an action for declaratory judgment pursuant to R.C. Chapter 2721. *Clendenin v. Girl Scouts of W. Ohio*, 150 Ohio St.3d 300, 2017-Ohio-2830, 81 N.E.3d 438, ¶ 9, citing *Felty v. AT&T Techs., Inc.*, 65 Ohio St.3d 234, 237, 602 N.E.2d 1141 (1992). Each of the three options is strictly limited such that failure to seek the appropriate avenue precludes the court from having subject-matter jurisdiction, resulting in dismissal of the case. *Felty* at 237.

{¶ 17} "Courts of Common Pleas do not have inherent jurisdiction in workmen's compensation cases but only such jurisdiction as is conferred on them under the provisions of the Workmen's Compensation Act." *Jenkins v. Keller*, 6 Ohio St.2d 122, 216 N.E.2d 379 (1966), paragraph four of the syllabus. The Ohio Worker's Compensation Act is primarily codified in R.C. Chap. 4123. Pursuant to R.C. 4123.512(A), "[t]he claimant or the employer may appeal an order of the industrial commission * * * in any injury or

occupational disease case, other than a decision as to the extent of disability to the court of common pleas * * *." The same right of appeal extends to the order of a SHO when the Commission declines to hear an appeal. *Id.*

{¶ 18} The Ohio Supreme Court has construed R.C. 4123.512 to further limit appeals to a common pleas court to only "those decisions involving a claimant's right to participate or to continue to participate in the [State Insurance Fund]." *Afrates v. Lorain*, 63 Ohio St.3d 22, 584 N.E.2d 1175 (1992), paragraph one of the syllabus. Thus, while claimants and employers may appeal Commission orders to a common pleas court under R.C. 4123.512 when the order grants or denies the claimant's right to participate or continue to participate, determinations as to the extent of a claimant's disability must be challenged in mandamus. *White v. Conrad*, 102 Ohio St.3d 125, 2004-Ohio-2148, 807 N.E.2d 327, ¶ 10; *State ex rel. Liposchak v. Indus. Comm.*, 90 Ohio St.3d 276, 278-279, 737 N.E.2d 519 (2000). Therefore, ascertaining whether an order is based upon a "right to participate" or "the extent of disability" is a threshold question for courts to resolve when determining if there is subject-matter jurisdiction over a decision appealed from the Commission. "In an appeal under R.C. 4123.512, the trial court determines the right-to-participate question de novo." *State ex rel. Belle Tire Distrib., Inc. v. Indus. Comm. of Ohio*, 154 Ohio St.3d 488, 2018-Ohio-2122, 116 N.E.3d 102, ¶ 24.

{¶ 19} The "right to participate" signifies the finalization of an allowance or disallowance of a claimant's worker's compensation claim by the Commission. *State ex rel. Evans v. Indus. Comm.*, 64 Ohio St.3d 236, 594 N.E.2d 609 (1992), paragraph one of the syllabus. If the employee's injury was caused while in the course of employment

when the injury occurred, the employee may then attempt to establish the extent of the disability, which deals with the amount of compensation to be received. *Liposchak* at 279. Once the right to participate is determined, only a ruling that terminates that right is appealable to a common pleas court pursuant to R.C. 4123.512. *Thomas v. Conrad*, 81 Ohio St.3d 475, 478, 692 N.E.2d 205 (1998), citing *Felty*, 65 Ohio St.3d 234, 238, 602 N.E.2d 1141. "The Industrial Commission's decision to grant or deny additional benefits under an existing claim does not determine the worker's right to participate in the State Insurance Fund, and is not subject to appeal pursuant to R.C. [4123.512]." *Evans*, paragraph two of the syllabus. In order to permanently terminate one's right to participate, the decision must "foreclose all future compensation under that claim." *Id.* at 240.

{¶ 20} Meanwhile, the "extent of disability" has been defined as that which "determines the amount of compensation and benefits payable under workers' compensation law for the allowed conditions of the claim." *Clendenin*, 150 Ohio St.3d 300, 2017-Ohio-2830, 81 N.E.3d 438, ¶ 12. A determination of "extent of disability" under R.C. 4123.512 presupposes that the claimant has been allowed to participate in the Worker's Compensation Fund. *Zavatsky v. Stringer*, 56 Ohio St.2d 386, 384 N.E.2d 693 (1978), paragraph two of the syllabus. "A decision by the Commission to increase or decrease compensation or benefits is a decision regarding the extent of the claimant's disability." *Clendenin* at ¶ 12, citing *Felty* at 239-240. Final administrative decisions of the Commission regarding the extent of a claimant's disability may be challenged by a writ of mandamus or in an action for declaratory judgment, but are not appealable in the common pleas court. *Liposchak* at 278-279.

## C. The Commission's Decision Was Not Appealable to the Common Pleas Court

{¶ 21} In this case, we must determine whether the SHO's order terminated Pulaski's right to participate or continue to participate in the worker's compensation fund, as Pulaski contends, or whether the order involved the extent of Pulaski's disability, as CCBCC argues. If the order does terminate Pulaski's right to participate, then the court of common pleas had jurisdiction to hear the appeal; if not, the court of common pleas lacked subject-matter jurisdiction and correctly dismissed the case. As the Supreme Court of Ohio has noted, "[t]hese principles seem simple enough, but distinguishing between appealable right-to-participate orders and nonappealable extent-of-disability orders * * * has never been easy." *Liposchak* at 278-279, citing *Cook v. Mayfield*, 45 Ohio St.3d 200, 202, 543 N.E.2d 787 (1989).

{¶ 22} The procedural history that led to this appeal is not in dispute. Pulaski was granted workers' compensation on the claim for his May injury. That decision granted Pulaski his right to participate in the State Insurance Fund. The question before this Court concerns the determination of the Commission as it relates to CCBCC's C-86 motion filed on November 30, 2020. The arguments of the parties center on whether the SHO's finding that the intervening September injury broke the chain of causation amounts to a final determination of the allowed claim.

{¶ 23} Pulaski argues that when the Commission finds that an intervening injury breaks the chain of causation between the new injury and the injury allowed on the approved claim, the claimant is forever barred from seeking future benefits on the approved claim and, therefore, finalizes the allowance of his claim. By using this

language, Pulaski reasons that the SHO's order involves a right to participate issue subject to the common pleas court's jurisdiction. Pulaski further contends that the trial court could not consider the DHO's order, because it was the SHO's order that was appealed to the common pleas court, and the hearings at each stage of the administrative process are considered de novo.

{¶ 24} CCBCC, on the other hand, argues that because the DHO explicitly denied its request that no further compensation and/or treatment be payable in the claim, and the SHO affirmed the decision of the DHO, then Pulaski was not forever foreclosed from obtaining future benefits on the approved claim. Therefore, the Commission's decision amounted to an extent of disability claim not subject to the common pleas court's jurisdiction.

{¶ 25} Before reaching a decision on the appropriateness of the trial court's dismissal, we first consider whether the trial court could rely on the explicit finding of the DHO that rejected CCBCC's request that no further compensation and/or treatment be payable in the claim. We find that under these circumstances, the trial court could rely on the DHO's explicit finding in order to determine whether the trial court lacked subject-matter jurisdiction.

{¶ 26} A DHO's order is subject to further review by a SHO and thereafter by the Commission wherein the order may be affirmed, modified, or vacated at either stage. R.C. 4123.511(D) and (E); *Haffner v. Conrad*, 122 Ohio App.3d 516, 520, 702 N.E.2d 160 (2d Dist.1997). R.C. 4121.35(C) provides that the SHO's decision becomes the decision of the Commission for purposes of an appeal pursuant to R.C. 4123.512 unless the

Commission decides to hear the appeal. Where a DHO's decision is affirmed by the SHO, it becomes the SHO's order to the extent that the SHO's order does not conflict with the DHO's order. *See, e.g. Thomas v. Conrad*, 2d Dist. Montgomery Nos. 15873, 15898, 1997 WL 66714, * 1 (Feb. 14, 1997) (staff hearing officer's decision modified a portion of the district hearing officer's order but affirmed in all other respects). *Compare Valentine v. PPG Industries, Inc.*, 145 Ohio App.3d 265, 271, 762 N.E.2d 469 (4th Dist.2001) (the SHO's use of the word "affirmed" in reference to the DHO's order was deemed a scrivener's error based on the extensive report of the SHO that completely contradicted the results of the DHO's order).

{¶ 27} Pulaski asserts that if a SHO simply adopts the reasoning of the DHO without providing its own reasoning and findings, then the trial court must consider the DHO's order because that officer's reasoning and findings become the SHO's reasoning and findings. Reply Appellate Brief at p. 4-6, citing to *Greenwalt v. Am. Std.*, 131 App.3d 600, 723 N.E.2d 167 (7th Dist.), and *Mitchell v. Robbins & Myers Inc.*, 6 Ohio St.3d 481, 452 N.E.2d 721 (1983). But Pulaski contends that is not what happened in this case because the DHO and SHO made separate evidentiary findings and used different reasoning. Pulaski also alleges that the DHO and SHO orders have contradictory findings. Therefore, according to Pulaski, the DHO's decision may not be properly considered and only the findings of the SHO can be reviewed. We disagree.

{¶ 28} While there are some differences in the DHO's order and the SHO's order, they are overall consistent. Significant in this case, the DHO made a specific finding denying CCBCC's request to forever foreclose future payments on the claim. The SHO's

order did not make any explicit findings on that issue but unmistakably affirmed the DHO's decision. Immediately following the language affirming the DHO's order, the SHO stated that CCBCC's C-86 motion "is granted to the extent of this order." The SHO's order neither discussed nor denied CCBCC's request that no further compensation and/or medical benefits be paid in the claim. Because the SHO's decision is otherwise silent on the issue, and therefore not in conflict with the DHO's decision it affirmed, then the DHO's unequivocal determination on that issue became the decision of the SHO. Since the SHO's order was not considered on appeal by the Commission and became the final order for the trial court to consider, the trial court could rely on that adopted portion of the DHO's order to determine jurisdiction.

{¶ 29} Because we find that the trial court could consider the DHO's order under the facts of this case, we overrule Pulaski's first assignment of error.

{¶ 30} Having found that the DHO's order, which was affirmed by the SHO, explicitly rejected CCBCC's request to forever foreclose Pulaski's ability to receive compensation under the claim, we further find that the trial court lacked subject-matter jurisdiction and properly dismissed the appeal. The Commission expressed a clear intent that it was not finalizing the allowance of Pulaski's claim because it explicitly rejected CCBCC's request to do so. Therefore, while the new injury was determined to have broken the chain of causation, the Commission did not find that the break forever ended CCBCC's responsibility for Pulaski's allowed claim.

{¶ 31} We have previously acknowledged that this possibility could exist when we considered *Lindamood v. Residence Inn*, 2d Dist. Montgomery No. 15763, 1996 WL

673263 (Nov. 22, 1996). Lindamood wanted us to adopt a rule that whenever the Commission finds an "intervening incident or injury," the right to future benefits is permanently terminated. *Id.* at *5. We expressed our reluctance to adopt that bright line rule because "[t]he nature of the intervening injury or incident may be of such a character that it would have no effect on possible future benefits for a pre-existing claim. Or it might have that effect, depending upon the facts." *Id.* In *Lindamood*, we simply did not know the facts to render a decision on that issue and remanded the case to the Commission for clarification of its findings. Specifically, we guided the Commission to "explain the nature of the intervening incident and, if possible, determine whether or not it cuts off future benefits from the pre-existing claim." *Id.*

{¶ 32} But unlike in *Lindamood*, the specific findings in this case indicate that the Commission did not find that the intervening September injury forever foreclosed Pulaski from recovering on the approved claim. Thus, although the SHO's order indicated that the September injury was an intervening injury that broke the chain of causation between Pulaski's original work-related injury and his September injury at home, that did not negate the clear expression of the Commission's intent that Pulaski was not forever foreclosed from collecting on the claim at a later time.

{¶ 33} We find this case is similar to that of *Gilbraith v. Autozone, Inc.*, 4th Dist. Jackson No. 13CA1, 2014-Ohio-2347, which considered the same arguments that Pulaski makes here. In *Gilbraith*, Gilbraith sustained a work-related injury in 2003 and was awarded worker's compensation. In 2008, he sustained a non-work-related injury at his home. Gilbraith filed a C-86 motion requesting temporary total disability

compensation, which the Commission denied, finding that the non-work related injury constituted an intervening injury that broke the chain of causation to the original injury in the claim. Gilbraith appealed to the Jackson County Common Pleas Court but voluntarily dismissed his appeal. *Id.* at ¶ 6.

{¶ 34} Thereafter, Gilbraith filed another C-86 motion requesting payment of medical bills. Gilbraith's motion was denied by the DHO, and that decision was then affirmed by the SHO. The Commission refused to hear an appeal of the SHO's decision. *Id.* at ¶ 7-8.

{¶ 35} Gilbraith re-filed his previously dismissed complaint and added the new orders denying his request for payment of medical bills. The trial court dismissed the case and remanded it to the Bureau of Worker's Compensation to clarify the effect of Gilbraith's non-work-related injury on his right to participate in the worker's compensation fund. *Id.* at ¶ 9-10.

{¶ 36} The DHO clarified its order and the SHO affirmed it. *Id.* at ¶ 11-12. Both orders again confirmed that Gilbraith had sustained a non-work-related intervening injury but stated that any future requests would have to be separately considered to determine whether medical treatment or disability compensation should be paid due to the allowed industrial injury or whether the costs were associated with the intervening non-work-related injury. The Commission declined to consider Gilbraith's appeal. *Id.* at ¶ 13.

{¶ 37} Gilbraith then appealed to the Jackson County Common Pleas Court. The trial court dismissed the case due to lack of subject-matter jurisdiction, and Gilbraith appealed to the Fourth District Court of Appeals. *Id.* at ¶ 14-16.

{¶ 38} On appeal, Gilbraith argued that the DHO's finding that the intervening injury broke the chain of causation was a finding that he no longer had the right to participate in the workers' compensation fund for his work-related injury. Gilbraith further argued that the SHO's decision stating that he could still prove causation in the future was illusory, because the DHO's finding that the intervening injury broke the chain of causation between his original work-related injury and his non-work-related injury equated to a finding that he could never establish a chain of causation between his original work-related injury and any subsequent injuries or periods of disability. *Gilbraith* at ¶ 17. The Fourth District disagreed.

{¶ 39} The Fourth District found that the Commission's statement that Gilbraith could seek future benefits under his original claim was an expression of a clear intent that it was not finalizing the allowance of his claim. *Id.* at ¶ 24. As the Fourth District explained, "[e]ven though the DHO determined that the intervening incident broke the chain of causation between the work-related injury and appellant's May 2008 disability, the commission did not determine that the intervening accident terminated all right to benefits for the allowed claim. Instead, the commission explicitly recognized that appellant could participate in the fund, if he established a causal relation between his work-related injury and future medical treatment or disability." *Id.* at ¶ 34.

{¶ 40} In the case at bar, the DHO explicitly rejected CCBCC's request that no further compensation or medical benefits be paid on the claim. That determination was then adopted by the SHO when it affirmed the DHO's decision and did not alter the DHO's finding on that issue. The fact that an intervening injury occurred and the Commission's

order disallowed temporary total disability compensation and medical treatment under an existing claim for the new injury, did not automatically mean that Pulaski could never recover under his claim in the future. Notably, the SHO found that Pulaski had experienced a "new tear" as a result of the September injury, not a "re-tear" of the May injury. Circumstances could exist in the future that would render Pulaski temporarily and totally disabled due to the allowed conditions in his claim. Therefore, Pulaski was not permanently foreclosed from obtaining potential future compensation on the claim, and the Commission's decision addressed the extent of Pulaski's disability, not his right to participate.

{¶ 41} We do not find that a Commission's order must contain express language terminating all future benefits on an allowed claim in order to constitute a right to participate decision appealable to the common pleas court. However, as is the case here, the Commission did expressly indicate it was *not* terminating all future benefits on the allowed claim. Thus, under these circumstances, we find that the Commission did not permanently foreclose Pulaski from obtaining potential future benefits on his allowed claim.

{¶ 42} We also note that the Commission terminated Pulaski's temporary total disability compensation as a result of having reached MMI, which is an extent of disability issue not appealable to the common pleas court. "Maximum medical improvement" is defined in Ohio Adm.Code 4121-3-32(A)(1) as "a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative

procedures. An injured worker may need supportive treatment to maintain this level of function." Temporary total disability may be terminated if, after a hearing, the Commission finds that the employee has reached MMI. Ohio Adm.Code 4121-3-32(B)(2)(c). "The definition makes clear that, after an injured worker has reached MMI, he or she may still need medical or rehabilitative treatment." *State ex rel. Brown v. Indus. Comm. of Ohio*, 10th Dist. Franklin No. 02AP-108, 2002-Ohio-4313, ¶ 15. However, even if the claimant has reached MMI and can no longer receive further temporary total disability compensation, the claimant may still be entitled to receive further medical care paid on the claim. *Id.* at ¶ 16. It is also possible that circumstances could change, such as a flare-up of an allowed condition, in which temporary total disability benefits could be reinstated. R.C. 4123.56(A). Because the termination of temporary total disability based on a finding of MMI does not foreclose all future compensation under an allowed claim, these issues also involve the extent of disability, not a right to participate. *Cervone v. Dayton Technologies*, 2d Dist. Montgomery No. 16794, 1998 WL 226376, *3 (May 8, 1998).

{¶ 43} We find that, because the Commission's order involved the extent of Pulaski's disability and not his right to participate, the trial court did not have subject-matter jurisdiction and properly granted CCBCC's motion to dismiss. Pulaski's second assignment of error is overruled.

III. Conclusion

{¶ 44} Having overruled both assignments of error, we affirm the judgment of the trial court.

. . . . . . . . . . . .

TUCKER, P. J. and WELBAUM, J., concur.


Copies sent to:

Marcus A. Heath
Gary D. Plunkett
Emily A. Port
Kevin R. Sanislo
Kent Hushion
Natalie J. Tackett
Hon. Steven K. Dankof